32   225
50   636
50   755
32   225
69L 215

Johl Parker, receiver of the New Jersey Mutual Life Insurance Company,

*v.*

James C. Hartt.

1. The defence of fraud in the consideration of a mortgage, which does not overthrow the instrument, but merely reduces the amount recoverable upon it, cannot be made on answer alone, but a cross-bill must be filed.

2. A foreclosure suit is so far a proceeding *in rem* as to exclude the defence of set-off.

3. Recoupment is the right to set off unliquidated damages, while the right of set-off, as distinguished from recoupment, comprehends only liquidated demands, or those capable of being ascertained by calculation.

On final hearing on bill, answer and proofs.

Parker *v.* Hartt.

*Mr. William S. Gummere,* for complainant.

*Mr. F. B. Colton,* for defendant.

The Vice-Chancellor.

This suit is brought to enforce the payment of two mortgages, made by the defendant to the New Jersey Mutual Life Insurance Company. The first bears date September 1st, 1870, and was made to secure the sum of $6,000; the second is for the sum of $2,000, and bears date August 15th, 1871. The last is not disputed. The first is admitted to be valid, but stands charged, as the defence insists, with certain equities which greatly reduce the amount recoverable upon it.

Stated in substance, the facts from which the defendant claims his equities spring are as follows: The defendant, on the 21st of December, 1866, procured the New Jersey Mutual Life Insurance Company, by the payment of a premium of $340.70, and on condition that a premium of like amount should be paid each year thereafter during his life, to insure his life in the sum of $10,000, for the benefit of his wife. The first premium was paid on the issuing of the policy, and a note was subsequently given for the second, but not paid when due. The defendant says, after the delivery of the note he concluded to abandon his policy, and therefore did not pay or renew the note. So matters were allowed to remain until August, 1870, when the defendant, being in need of money, applied to the company for a loan of $6,000, and proposed, if they would make it, he would revive his policy. His proposal was accepted; his old policy was surrendered and cancelled, and a new one issued, and out of the moneys loaned, and to secure which the mortgage in controversy was given, the note given for the second premium, and also the other premiums in arrear, with interest thereon, were deducted. These premiums were, however, credited with the dividends which the old policy would have earned if it had

been kept in full force. The parties dealt upon the understanding that the old policy should stand revived, and that each should stand to the other in the same condition and position as though no default had occurred. Both policies were to a certain extent non-forfeitable. Each provided that after the payment of one. or more premiums, if no subsequent premiums were paid, the policy should not become wholly void, but a certain part of the sum insured should still be payable to the payee of the policy on the death of the person whose life was insured. The sum thus payable decreased in amount as the period of the default increased in length, the sum payable being much larger if death ensued after default had been made in the payment of the second premium and before the third became due, than if it occurred after the third had also become due. And the amount so payable continued to decrease as each subsequent premium fell in arrear, until, under the first, it sank to nothing, and under the second, until it ran down to a stated sum of trifling amount. The two policies were precisely alike, except in the particular just indicated, and this further and more important one: that the sum payable under the second, after default had been made in the payment of one or more premiums, was considerably less than that payable under the first. No default was made after the second policy was issued. All the premiums falling due prior to the time when the company was declared insolvent, were paid as they became due.

The defendant contends that, upon these facts, three equities arise: First, that the corporation, in issuing a policy to him, materially different from that which his proposal required, committed a fraud upon him, and he should therefore be permitted to rescind the contract of insurance, and have credit on his mortgage for all the premiums he has paid; second, that so much of the loan as was withheld to pay premiums due on his old policy was withheld without consideration or any equivalent, and should therefore be credited on his mortgage; and, third, that the mortgage

and policy were reciprocal contracts, constituting one transaction; and inasmuch as the corporation has now become unable, in consequence of its insolvency, to perform its contract, the defendant should, in justice, be absolved from his part of it, and he should be permitted to credit upon his mortgage debt the payments he has made in performance of his part of the contract.

If the first ground of the defence was fully proved, I think it would be of no advantage to the defendant in the present condition of the pleadings. He is here by answer alone. I think I am bound to consider the rule firmly established, that to enable a defendant to avail himself of the defence of fraud in the consideration of a mortgage, which does not go to the extent of a complete nullification of the instrument, and does not therefore entitle him to a judgment of dismissal, he must have recourse to a cross-bill. He cannot make it by simple answer. Such I understand to be the doctrine very distinctly laid down by the court of errors and appeals in *O'Brien* v. *Hulfish,* 7 *C. E. Gr. 472.* It had been previously enunciated by both Chancellor Green and Chancellor Zabriskie. *Miller* v. *Gregory,* 1 *C. E. Gr. 274; Graham* v. *Berryman,* 4 *C. E. Gr. 29.*

The evidence in this case in support of the charge of fraud is not sufficient to raise a suspicion of an intent to do wrong. All that we have is from the mouth of the defendant. He says, he proposed, if the insurance company would make him a loan, he would revive his policy; that his proposal was accepted and a new policy issued; that he supposed the new policy was the same, in terms, as the old one; that he had no reason to think otherwise, for nothing was said which would have justified him in supposing any change had been made. But they differed in a material respect. This is his whole case. The difference is apparent upon the papers themselves. The second states upon its face that it was issued in continuation of the first. If he had taken the trouble to read the two policies, he could not have failed to have discovered the variance. It was patent.

Frauds are not perpetrated by such methods. The transaction appears to have been entirely free from everything like deceit, falsehood or trick. The evidence shows a mistake, but nothing more. The mistake has done the defendant no harm. That provision of the last policy of which he complains, was of no importance or value to him, except he made default in the payment of premiums. He made no default. In the present condition of affairs, therefore, the mistake is quite immaterial, and it may be doubted whether it is of sufficient materiality now to justify the exercise of the power of reformation. However that may be, it is clear the case is free from the least suspicion of fraud.

The second ground of defence is even more feeble in its facts. The claim is, that the money withheld to pay the premiums in revival of the original contract was withheld without consideration; in other words, the defendant got nothing for it. It was kept back, as I understand the arrangement, pursuant to the defendant's contract. His proposal was that the old contract should be revived; not that a new contract should be made, or that his life should be insured as a new risk. By this course he avoided a re-examination as to the condition of his health, and obtained a continuation of his insurance at the original premium. On a new contract he would have been required, in consequence of his being older, to pay a higher premium. In the absence of other terms being expressed in his proposal, his offer to revive would necessarily have been understood to have been conditioned on the payment of the premiums in arrear. He did not ask his insurers to forgive him what he owed them, nor to grant him insurance below the customary rates. Besides, he submitted to the deduction. He says he submitted unwillingly, but he did submit, and has received all the advantage the arrangement could give him. He escaped a new examination as to the condition of his health, got insurance at a lower rate of premium than he would have been entitled to on a new contract, and also got what was the main object of his proposal—the loan. Under

these circumstances, I think it could scarcely be considered equitable, that he should, at this late day, be permitted to repudiate the arrangement.

What the defendant really seeks under his last specification of defence, is to be permitted to offset a counter-claim against his mortgage debt. That, indeed, is the real object of all his defences. His counsel called the right claimed here, not a right to offset, but to recoup.

There is undoubtedly a technical distinction between set-off and recoupment. Judge Bronson, in *Batterman* v. *Pierce, 3 Hill 174*, thus distinguished them: "When the demands of both parties spring out of the same contract or transaction, the defendant may recoup, although the damages on both sides are unliquidated; but he can only offset where the demands of both parties are liquidated, or are capable of being ascertained by calculation." The defendant's claim, under this head, is stated in his answer, in these words: "That all of the premiums which this defendant has paid since the 15th day of September, 1870, should be credited as payments made from time to time on account of the principal of his mortgage." There can be no difficulty in ascertaining the amount of premiums so paid. The simplest sort of a calculation will give their aggregate, and when that is done, the sum is liquidated. Stated correctly, the right claimed by the defendant is not recoupment, but set-off. This right constitutes no defence in a foreclosure suit. The principles governing it, in ordinary cases, have no application to a suit of this nature. A foreclosure suit is so far a proceeding *in rem* as to exclude the defence of set-off. Nothing can be set up in such a suit, by way of satisfaction of the mortgage, in whole or in part, except payment. There must either have been a direct payment of part of the debt, or an agreement that the sum proposed to be offset should be received and credited as payment. This has long been the established doctrine of this court. *White* v. *Williams, 2 Gr. Ch. 383; Dolman* v. *Cook, 1 McCart. 67; Bird* v. *Davis, Id. 471; Dudley* v. *Bergen, 8 C. E. Gr. 397.*

It has recently been applied by the present chancellor, in a case in all respects precisely like the one under consideration. *Vanatta* v. *N. J. Mutual Life Ins. Co., 4 Stew. 17.*

None of the defences can prevail. The complainant is entitled to a decree, without deduction on account of any of the defences set up.